Chad D. Bernard (SBN 194162)
Chad.Bernard@jacksonlewis.com
Eric J. Gitig (SBN 307547)
Eric.Gitig@jacksonlewis.com
Martin P. Vigodnier (SBN 311834)
Martin.Vigodnier@jacksonlewis.com
Nareg A. Kourouyan (SBN 334031)
Nareg.Kourouyan@jacksonlewis.com
**JACKSON LEWIS P.C.**
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5408
Telephone:   (213) 689-0404
Facsimile:    (213) 689-0430

Attorneys for Defendant
ROCKET MORTGAGE, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COURTNEY TOLBERT, on behalf of himself and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>ROCKET MORTGAGE, LLC, a Michigan Limited Liability Company; and DOES 1-25, inclusive,<br><br>        Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453 (CAFA)**<br><br>[*Filed concurrently with Declaration of Eric J. Gitig, Declaration of Amy Courtney; Civil Case Cover Sheet; Notice of Interested Parties; and Corporate Disclosure Statement*]<br><br>Complaint Filed:   June 21, 2023 |

**TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF COURTNEY TOLBERT, AND PLAINTIFF'S ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant ROCKET MORTGAGE, LLC ("Defendant") hereby invokes this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332, 1441, 1446 and 1453, and removes the above-entitled action to this Court from the

Superior Court of the State of California in and for the County of Riverside based on the Class Action Fairness Act of 2005 ("CAFA").  In support thereof, Defendant asserts the following:

## SERVICE AND PLEADINGS FILED IN STATE COURT

1.      On June 21, 2023, Plaintiff COURTNEY TOLBERT ("Plaintiff") filed an unverified Class Action Complaint against Defendant in the Superior Court of the State of California for the County of Riverside, entitled *COURTNEY TOLBERT, on behalf of himself and on behalf of all others similarly situated, vs. ROCKET MORTGAGE, LLC; and DOES 1-25, inclusive*, Case No.: CVRI2303158, which sets forth the following seven causes of action: (1) Unpaid Minimum Wage; (2) Unpaid Overtime and Double Time; (3) Improper Meal Periods; (4) Improper Rest Periods; (5) Unlawful Deductions; (6) Improper Wage Statements; (7) Wages Not Paid Upon Separation, (8) Failure to Reimburse Expenses; and (9) Unfair Competition.  (Declaration of Eric J. Gitig ("Gitig Decl.") at Exhibit "A.")  A true and correct copy of the Summons, Complaint, and Notice of Service of Process, and other related court documents received by Defendant's counsel are attached as Exhibit "A" to the Gitig Declaration.  As stated in paragraph 38 of the Complaint, Plaintiff brought this action on behalf of himself and a putative class consisting of: "All individuals who have been employed or are currently employed by Defendants, as non-exempt employees dating back four years from June 19, 2019 to the present date [excluding] Defendants in this action, any entity in which the Defendants have a controlling interest, any officers, directors, and shareholders of the Defendants, and any legal representatives, heirs, successors, and assigns of the Defendants."

2.      Plaintiff served Defendant with a copy of the Summons and Complaint on June 23, 2023.  (Gitig Decl. at ¶ 2, "Exhibit A.")

3.      On July 24, 2023, Defendant filed and served an Answer to the Complaint in the Riverside Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses.  (*Id.* at ¶ 3, "Exhibit B.")  A true and correct copy of Defendant's Answer is attached as Exhibit "B" to the Gitig Declaration. ///

4.      As of the date of this Notice of Removal, Exhibits "A" and "B" to the Gitig Declaration constitute all of the pleadings filed or received by Defendant in this matter. (*Id.* at ¶ 4.)

## TIMELINESS OF REMOVAL

5.      This Notice of Removal has been filed within 30 days after Defendant was served with a copy of the Summons and Complaint on June 23, 2023.  (*Id.* at ¶ 2.) Therefore, it has been filed within the time-period mandated by 28 U.S.C. § 1446(b). *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999); *see also* California Code of Civil Procedure § 415.30(b); *see Sheikh v. Cisco Sys.*, No. C-07-00262 RMW, 2007 U.S. Dist. LEXIS 104742, at *3 (N.D. Cal. June 11, 2007).

## VENUE IS PROPER

6.      This action was filed in the Superior Court in and for the County of Riverside. Thus, venue of this action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a).  Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides.  The Complaint asserts "Defendant's obligations and liabilities to Plaintiff arose in Riverside County, California…"  (*See* Gitig Decl. at ¶ 2, Exhibit "A" ["Complaint"] at ¶ 5.)

## REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT

7.      Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

8.      In addition, CAFA provides for jurisdiction in the district courts where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities.  (28 U.S.C. § 1332(d)(5).)

9.     As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, and – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from Defendant.  (*See* 28 U.S.C. §§ 1332(d) and 1453.) Further, Defendant is not a State, State official, or other governmental entity.

**A.     The Putative Class Contains More Than 100 Members.**

10.     Defendant's records identify in excess of 100 individuals, including Plaintiff, who have been employed by Defendant as non-exempt employees in the State of California during the "Putative Class Period" between June 21, 2019 and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class").  (Declaration of Amy Courtney ["Courtney Decl."] at ¶¶ 7-9.) Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.     None of the Named Defendants Are Government Entities.**

11.     Defendant is neither a State, a State official, or any other government entity. (Courtney Decl. at ¶ 3.)

**C.     Minimal Diversity is Satisfied Under CAFA.**

12.     CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens.  28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant."; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10,

2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

13.    Citizenship of the parties is determined by their citizenship status at the action's commencement. *Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

14.    For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"; *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008).) Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

15.    Defendant is informed and believes, that Plaintiff was, at the time this action was commenced, and still is, a resident and citizen of the State of California. (Courtney Decl. at ¶ 5.)

16.    For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v. Carefusion Res., LLC,* No. 18-2852, 2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal. July 1, 2019).) CAFA expressly states that "for purposes of this section .... an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized." (28 U.S.C. § 1332(d)(10).) This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC

1   is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia*
2   *Properties Anchorage,* 437 F.3d 894, 899 (9th Cir. 2006).

3         17.    With respect to ascertaining a corporation's principal place of business, the
4   United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend,*
5   559 U.S. 77, 80-81 (2010).  Under the nerve center test, a corporation's principal place of
6   business is where a corporation's high-level officers direct, control and coordinate the
7   corporation's activities.  *Id.*  A corporation can only have one "nerve center." *Id.* at 93-94.
8   In evaluating where a corporation's "nerve center" is located, courts will look to the center
9   of overall direction, control, and coordination of the company and will no longer weight
10  corporate functions, assets, or revenues in each state.  *Id.*

11        18.    At the time Plaintiff filed the Complaint and presently, Defendant has been a
12  limited liability company organized under the laws of the State of Michigan. (Courtney Decl.
13  at ¶ 4.) At all relevant times, Defendant's company headquarters – and thus its principal place
14  of business – has been in the State of Michigan where the majority of its executive,
15  administrative, financial and management functions are conducted, and from where the
16  majority of its high-level officers direct, control, and coordinate and control the company's
17  operations and activities. (*Id.*) Most members of Defendant's executive team maintain their
18  offices in the State of Michigan, while none of its executive officers reside in the State of
19  California. (*Id.*) Accordingly, for purposes of removal under CAFA, Defendant is citizen of
20  the State of Michigan and is not a citizen of the State of California.

21        19.    Given the above, minimal diversity exists under CAFA because at least one
22  member of the Putative Class (Plaintiff) was, at the time this action was commenced – and
23  is still believed to be – a citizen of the State of California, while Defendant  was – and still
24  is – a citizen of the State of Michigan.[1] (28 U.S.C. § 1332(d)(2).)
25  ///

26

27  _____
    [1]    The citizenship of the Doe defendants is immaterial for the purpose of determining
28  minimal diversity under CAFA. (28 U.S.C. §§ 1332(d)(2) and 1441(a); *See Serrano v. 180*
    *Connect, Inc.,* 478 F.3d 1018, 1021 (9th Cir. 2007).

---

D.    **The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.**[2]

20.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA: "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly . . .").

21.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims.  *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp. 993, 1001 (C.D. Cal. 2002) *citing Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim").  Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in

---

[2]    Defendant denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or Putative Class Members are entitled to any compensatory or statutory damages, injunctive relief, restitution, penalties, attorneys' fees, or any other relief. Defendant also denies that any of Plaintiff's claims are appropriate for class treatment. Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan,* 395 U.S. 402, 407 n.3 (1969).

22.    Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs*., 28 F.4th 989, 991-994 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

23.    In *Dart Cherokee Basin Operating Company, LLC v. Owens,* the United States Supreme Court held, like here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold." 135 S. Ct. 547, 554 (2014) (emphasis added). Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions."

*Salter v. Quality Carriers, Inc.,* 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted).  Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'"  *Adams v. Toys 'R' US – Delaware, Inc.,* 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart,* 135 S. Ct. at 554.)  On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183-84 (9th Cir. 2015).

24.    Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise.  *See e.g., Mendoza v. OSI Indus., LLC*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *11-18 (C.D. Cal. Sep. 16, 2022) ("Because Plaintiffs allege a 'policy' of requiring employees to work through their meal and rest break periods, without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and five rest break violations per employee per week reasonable … [and also finds Defendant's] assume[d] violation rate of 100% for failure to timely pay wages at the end of class members' employment and to issue accurate wage statements … reasonable and consistent with Plaintiffs' allegations."); *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line,* No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced

some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

25.     Plaintiff's Complaint does not allege a specific amount in damages. Nevertheless, without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the factual allegations and causes of action set forth in the Complaint[3] conservatively places an aggregate amount in controversy exceeding $5,000,000 exclusive of attorneys' fees, interest, and costs, as follows:

### *Failure to Pay Overtime and Double Time Wages (Second Cause of Action)*

26.     The Complaint alleges that Defendant "did not pay Plaintiff and other similarly situated employees for all hours worked on any given day or in any given workweek" and that Putative Class Members were "regularly compelled to work off the clock." (Complaint at ¶¶ 20-23.)  The Complaint further alleges that during the relevant time period, Defendant "Plaintiff and Class Members frequently worked in excess of ten (10) hours and often times worked in excess of twelve (12) hours in one (1) workday" but "failed to pay all premium overtime wages." (Complaint at ¶¶ 50-53.)

27.     Thus, while Defendant completely denies Plaintiff is entitled to recover any overtime damages, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one hour of unpaid overtime wages per workweek for all Putative Class Members, which would place over $1,134,000 in controversy in connection with his overtime claim ($21.00 average hourly wage rate x 1 hour per week x 36,000 workweeks[4]).

---

[3]     *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

[4]     Although the Putative Class Period spans from June 21, 2019 to present, the calculations used in this Notice of Removal are based on Defendant's records for Putative Class Members during a shorter period from July 13, 2019 to May 22, 2023. (Courtney Decl. at ¶ 7-9.) Defendant reserves the right to later address the potential amount in controversy in connection with Plaintiff's claims for the full Putative Class Period.

---

(Courtney Decl. at ¶¶ 6-9, Complaint at ¶¶ 20-23, 48-58.)[5]

*Improper Meal Periods (Third Cause of Action)*

28.     The Complaint alleges that "Plaintiff and Class Members did not receive meal periods." (Complaint at ¶ 64.)  More specifically, the Complaint asserts that "Plaintiff and Class Members were forced to work in excess of five (5) hours per day on a regular basis without being provided a daily thirty (30) minute restrictive-free meal period" and that "Defendants' work demands and pressure from Defendants' management, … as a result of an implemented policy, regularly required Plaintiff and Class Members to return to work before completing (constitutes a missed meal period) an uninterrupted meal period of thirty (30) minutes." (*Id.*)  The Complaint goes on to allege that, while "Plaintiff and Class Members frequently worked in excess of ten (10) hours and often times worked in excess of twelve (12) hours in one (1) workday," they "were never provided a second, uninterrupted meal period of thirty (30) minutes for those shifts." (*Id.*)  Additionally, the Complaint contends "Defendants never compensated Plaintiff and Class Members [an] additional hour of pay at their regular rate as required by California law when meal periods were not provided." (*Id.*)

29.     Thus, while Defendant completely denies Plaintiff is entitled to recover any meal period premiums, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one meal period premium per workweek for all Putative Class Members, which would place over $756,000 in controversy in connection with his meal period claim ($21.00 average hourly wage rate x 1 meal period per week x 36,000 workweeks). (Courtney Decl. at ¶¶ 7-8; Complaint at ¶¶ 24-27, 34, 59-65.)

///

---

[5]     For purposes of meeting the jurisdictional requirement under CAFA, and based on Plaintiff's allegation that Putative Class Members "frequently worked a minimum of ten (10) hours in a single day and often times worked over twelve (12) hours or more in a single day," Defendant conservatively calculated the amount in controversy in connection with Plaintiff's overtime claim without calculating the potential minimum wages in controversy. (Complaint at ¶ 21.) Defendant reserves the right to later address the potential amount in controversy in connection with Plaintiff's minimum wage claim.

*Improper Rest Periods*

30. The Complaint alleges, "Plaintiff and Class Members were systematically not permitted and/or authorized and/or paid to take one (1) ten (10) minute rest period (off duty for ten consecutive minutes) for every four (4) hours worked or major fraction thereof…" (Complaint at ¶ 70.) Moreover, the Complaint alleges, "that Defendant "never compensated Plaintiff and Class Members one additional hour of pay at their regular rate as required by California law for each day on which rest periods were not authorized or permitted." (*Id.* at ¶ 29.)

31. Thus, while Defendant completely denies Plaintiff is entitled to recover any rest period premiums, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one rest period premium per workweek for all Putative Class Members, which would place over $756,000 in controversy in connection with his rest period claim ($21.00 average hourly wage rate x 1 rest period per week x 36,000 workweeks). (Courtney Decl. at ¶¶ 7-8; Complaint at ¶¶ 28, 29, 34, 66-72.)

*Improper Wage Statements*

32. Plaintiff alleges that he and other Class Members "were intentionally not provided accurate wage statements, pursuant to Labor Code section 226(a)…" (Complaint at ¶ 80.) Specifically, Plaintiff alleges that the rates, hours worked, miscalculation of overtime rate based on commission rate and hourly rate, off-the-clock hours worked, and premium wage payments for missed meal and rest breaks should have been but were not itemized on the wage statements issued to Plaintiff and Class Members. (Complaint at ¶ 81.)

33. During the one-year statute of limitations period applicable to Labor Code section 226 (*i.e.*, June 21, 2022 to the present), Defendant has issued in excess of 4,300 wage statements to over 295 Putative Class Members. (Courtney Decl. at ¶ 9.) Thus, while Defendant completely denies Plaintiff is entitled to recover any wage statement penalties, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $415,250 in controversy in connection with his wage statement claim ($50 per first wage

statement x 295 Putative Class Members, plus $100 per each subsequent wage statement x 4,005 pay periods worked by Putative Class Members between June 21, 2022 and the present, up to a maximum of $4,000 per Putative Class Member). (Complaint at ¶¶ 78-82.) *See* Labor Code § 226(e)(1); *see also, e.g.*, *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.").

### *Wages Not Paid Upon Separation*

34.    The Complaint alleges that Defendant "willfully violated Labor Code sections 201-203 by failing to provide all owed wages at separation from employment." (Complaint at ¶ 87.)

35.    While Defendant completely denies Plaintiff and Putative Class Members are entitled to recover any waiting time penalties, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $1,814,400 in controversy in connection with his claim for waiting time penalties (360 Putative Class Members x $21.00 average hourly rate x 8 hours x 30 days). (Courtney Decl. at ¶¶ 7-9; Complaint at ¶¶ 30, 32, 86-88.) This calculation is further supported by the fact that Plaintiff has tied his waiting time penalties claim to Defendant's alleged failure to pay minimum wage, pay overtime wage, provide proper meal periods, and provide proper rest periods. (Complaint at ¶ 30.) As such, it is reasonable for Defendant to assume Plaintiff is seeking damages for each Putative Class Member that would, in turn, entitle every individual who separated during the applicable three-year limitations period to the full amount of waiting time penalties. Further, the caselaw supports application of a 100% violation rate for alleged statutory violations, given that Plaintiff would only need to establish that each Putative Class Member was denied just one minute of minimum wage, one minute of

overtime, one meal period penalty, or one rest period penalty during the limitations period.[6]

### *Failure to Reimburse Expenses*

36.     Plaintiff alleges that he and "Reimbursement Class Members have incurred, and are continuing to incur, necessary expenditures and losses in direct consequence of the discharge of duties, or of obedience to Defendants' directions as an employer…" (Complaint at ¶ 97.) Plaintiff alleges these expenditures include but are not limited to cell phones, Internet, home office, utilities, and computers. (*Id.* at ¶ 96.) Plaintiff alleges Defendant "intentionally and improperly failed to reimburse necessary expenditures Plaintiff and Reimbursement Class Members incurred." (*Id.* at ¶ 100.)

37.     Thus, while Defendant completely denies Plaintiff is entitled to recover any expense reimbursements, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover, on average, at least $15.00 per week for all Putative Class Members, which would place <u>$540,000</u> in controversy in connection with his expense

---

[6]     *See Chavez v. Pratt (Robert Mann Packaging), LLC*, No.19-cv-00719-NC, 2019 U.S. Dist. LEXIS 59399, at *9-10 (N.D. Cal. April 5, 2019) ("By tying the unpaid final wage claim to his other claims, [plaintiff] makes [defendant's] assumption of 100% violation for unpaid wages reasonable..."); *Kastler v. Oh My Greens, Inc.*, No. 19-cv-02411-HSG, 2019 U.S. Dist. LEXIS 185484, at *16 (N.D. Cal. Oct. 25, 2019) (approving 100% violation rate when calculating waiting time penalties because Plaintiff tied waiting time penalties claim to his other claims); *Mackall v. HealthSource Global Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 U.S. Dist. LEXIS 119292, at *16-19 (N.D. Cal. Sep. 2, 2016) (upholding defendant's assumed 100% violation rate for waiting time penalties in CAFA removal where the complaint alleged overtime, meal period and rest break violations and a willful failure to timely pay final wages, and plaintiff failed to offer any alternative calculation in a lower amount); *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 U.S. Dist. LEXIS 60078, at *9 (C.D. Cal. May 5, 2016) (Bernal, J.) (for derivative penalties which are based on a "laundry list" of other potential violations, it is reasonable for a removing defendant to assume a 100% violation rate for each terminated employee); *Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499-GEB-CKD, 2014 U.S. Dist. LEXIS 78353, at *3 (E.D. Cal. June 5, 2014) ("These allegations of unpaid wages [including uncompensated overtime, meal period and rest period allegations] support Defendants' position that it is more likely than not that Plaintiffs' section 203 claim places in controversy 30-days of waiting time penalties…").

---

reimbursement claim ($15.00 per week x 36,000 workweeks).  (Courtney Decl. at ¶¶ 7-9; Complaint at ¶¶ 35, 90-104.)

### *Attorneys' Fees*

38.    Plaintiff also seeks an unspecified amount of attorneys' fees in connection with his putative class claims for unpaid minimum wages, unpaid overtime wages, failure to provide accurate itemized wage statements, and failure to reimburse expenses.  (Complaint at ¶¶ 56, 82, 95, 98, 101, 104, Prayer for Relief.)  The Court must consider and include these fees and costs in determining the amount in controversy.  *Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted).). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more.  *See, e.g., McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.,* 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California,* 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S.

Dist. LEXIS 78510, at \*32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

39.    "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.,* No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at \*23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC,* No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at \*12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at \*16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.,* No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at \*51 (C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

40.    Thus, while Defendant completely denies Plaintiff is entitled to recover any damages or corresponding attorneys' fees, the Court should consider attorneys' fees of at least $1,353,912, a conservative estimate at 25% of the aggregate amount in controversy calculated in Paragraphs 26-37 above in connection with Plaintiff's putative class claims for unpaid overtime wages, wage statement violations, and failure to timely pay final wages. *See, e.g., Oda v. Gucci Am., Inc.,* 2015 U.S. Dist. LEXIS 1672, at \*11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

\*    \*    \*    \*    \*

41.    Thus, for the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, but rather expressly denying all allegations set

forth in the Complaint, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (over **$6,769,562** for the period between June 21, 2022 to May 22, 2023) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## NOTICE TO ALL PARTIES AND STATE COURT

42.     In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Riverside Superior Court.  Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## CONCLUSION

43.     Based on the foregoing, Defendant hereby removes the above-captioned action from the Riverside Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453) and respectfully requests that this Court retain jurisdiction for all further proceedings.


Dated:  July 24, 2023                          **JACKSON LEWIS P.C.**



                                        By:    _/s/ Eric J. Gitig_

                                               Chad D. Bernard
                                               Eric J. Gitig
                                               Martin P. Vigodnier
                                               Nareg A. Kourouyan

4859-4242-2383, v. 1